[Cite as *State v. Vandyne*, 2013-Ohio-3386.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO :

    Plaintiff-Appellee : C.A. CASE NO.   2013 CA 1

v. : T.C. NO.   12CRB3101

JEREMY M. VANDYNE : (Criminal appeal from
                                   Municipal Court)
    Defendant-Appellant :

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the     2nd     day of     August    , 2013.

. . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, Assistant City Prosecutor, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

ANTHONY W. SULLIVAN, Atty. Reg. No. 0062416, 130 West Second Street, Suite 604, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Jeremy M. Vandyne was convicted of violating an ex parte civil protection order after a bench trial in the Clark County Municipal Court. The court sentenced him to 30 days in jail, all of which was suspended on the conditions that he pay a $250 fine and

court costs by January 11, 2013, and that he have no violation of the protection order for six months.

{¶ 2}     Vandyne appeals from the trial court's judgment, claiming that the trial court erred in allowing the State to offer the protection order at trial when it was not provided to defense counsel during discovery.  He further claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.   For the following reasons, we will affirm the trial court's judgment.

*I. Factual and Procedural History*

{¶ 3}     The State's evidence at trial established the following facts:

{¶ 4}     Vandyne and Amanda Penewit were divorced on March 19, 2010.   The couple has two children together, and Penewit has a daughter from a prior relationship.   On March 29, 2012, Penewit obtained an ex parte civil protection order (CPO) from the Greene County Court of Common Pleas, Domestic Relations Division.   Vandyne was served with the CPO on April 4, 2012.   The CPO prohibited Vandyne from being within 500 feet of Penewit or any place she was likely to be.   The CPO further provided, "If Respondent accidentally comes in contact with protected person in any public or private place, Respondent must depart *immediately*."   (Emphasis in original.)

{¶ 5}     On July 24, 2012, Vandyne was at the Clark County Fair with his girlfriend, April, and April's daughter.   At 5:45 p.m., they were in the sheep barn, where there was an area for sheep and a separate area for rabbits.   A few minutes later, Penewit came into the sheep barn with her three children to watch the bunny scramble that was to begin there at 6:00 p.m.   She saw Vandyne, April, and April's ex-husband, Jerry Mendenhall, on the other

side of the sheep barn, approximately 50-100 feet away. Penewit made eye contact with April and Vandyne. She later saw Vandyne pointing her out to Mendenhall.

{¶ 6} The bunny scramble lasted 45 minutes to one hour. According to Penewit and her oldest daughter (who was eleven at the time of trial), Vandyne remained in the sheep area for the duration of the bunny scramble. Near the end of the bunny scramble, Mendenhall approached Penewit and the children, said hello to Penewit, and then said hello for Vandyne to Penewit and Vandyne's two younger children. At that juncture, Penewit and her children left the sheep area and went to the Sheriff's Office's command center at the fair. Penewit reported Vandyne's conduct to Deputy Douglas Peterson.

{¶ 7} Deputy Peterson paged Vandyne over the fair's intercom system, but Vandyne did not come to the command center. Other deputies located Vandyne a couple of hours later in the midway area of the fair, and Vandyne was arrested. Vandyne told Deputy Peterson that he did not think that he had violated the CPO.

{¶ 8} Vandyne and Mendenhall testified on Vandyne's behalf. They testified that Vandyne, April, April's daughter, and another child were in the sheep pen of the sheep barn prior to 6:00 p.m. Mendenhall arrived around 5:45 p.m. When Penewit arrived, Mendenhall asked Vandyne if he (Mendenhall) could say hello to her. Mendenhall approached Penewit before the bunny scramble began, and Vandyne left the sheep barn immediately after Penewit arrived in order to register April and Mendenhall's daughter for the award ceremony. The registration for the award ceremony closed at 6:15 p.m.

{¶ 9} Vandyne was charged with violating a protection order, in violation of R.C. 2919.27(A)(1), a first-degree misdemeanor. After a bench trial, the trial court found

Vandyne guilty of the offense. The court noted that it was undisputed that there was a protection order, that Vandyne was served with that order, and that he was within 500 feet of Penewit at the Clark County Fairgrounds on July 24, 2012. The court identified the principal issue as whether Vandyne departed immediately when he knew that he was within the distance prohibited by the CPO. The court stated that Penewit's testimony on that issue was "somewhat problematic" in that she testified both that she did not know if Vandyne had left immediately and that Vandyne had remained for the entire bunny scramble. The trial court noted, however, that Penewit's daughter "did testify that the Defendant was also * * * present * * * for that period of at least forty-five minutes during that scramble." The court thus found that the State had established the offense of violating a protection order beyond a reasonable doubt.

{¶ 10} Vandyne appeals from the trial court's judgment, raising three assignments of error.

II. *The State's Alleged Failure to Provide A Copy of the Civil Protection Order*

{¶ 11} In his first assignment of error, Vandyne claims that "[t]he trial court erred in permitting the State of Ohio's introduction of the civil protection order as it was not provided in discovery to the Defendant after a discovery demand was made."

{¶ 12} Crim.R. 16 governs discovery in criminal prosecutions. By its terms, the purpose of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The Ohio Supreme Court has stated that the overall

objective of the discovery rules is "'is to remove the element of gamesmanship from a trial'" and "to prevent surprise and the secreting of evidence favorable to one party." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978).

**{¶ 13}** Once discovery is initiated by demand of the defendant, the prosecutor is required to copy or photograph certain "items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule," as identified in Crim.R. 16(B). These items include "laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places." Crim.R. 16(B)(3). The parties have a continuing duty to supplement their disclosures. Crim.R. 16(A).

**{¶ 14}** "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood* at paragraph two of the syllabus. The Supreme Court has identified three factors that a trial court should consider in exercising that discretion when the discovery violation is committed by the State: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether

foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983).

{¶ 15} Prior to and during the trial, Vandyne objected to the State's introduction of a certified copy of the CPO, because the prosecutor failed to provide a copy to defense counsel in response to the defense's discovery demand. The prosecutor responded that he (the prosecutor) provided a copy of the CPO to Vandyne prior to the start of the trial, that Vandyne previously had been served with the CPO, that there has been ongoing litigation between Vandyne and his ex-wife regarding the CPO, that the CPO is a public record, and that Vandyne did not file any motion to compel discovery. The prosecutor thus argued that Vandyne was not prejudiced by any failure by the State to provide him the CPO until the day of trial. Defense counsel acknowledged that Vandyne had a copy of the CPO and that counsel had seen the CPO prior to the day of trial. The trial court overruled Vandyne's objection, finding no prejudice to Vandyne by the State's use of the CPO.

{¶ 16} While we do not accept some of the prosecutor's arguments (e.g., that the CPO's status as a public record and the lack of a motion to compel are relevant), the trial court did not abuse its discretion in overruling Vandyne's objection. Vandyne knew that the charged offense concerned a violation of the CPO. He had a copy of the CPO and had shared the CPO with his defense counsel. The prosecutor did provide a copy of the CPO to Vandyne on the morning of trial. Vandyne did not request a continuance. Accordingly, even assuming that the State should have provided a copy of the CPO to Vandyne earlier, Vandyne and his defense counsel had the CPO prior to the day of trial, and there was no

evidence of surprise or prejudice to Vandyne. The trial court reasonably allowed the State to present the CPO at trial.

{¶ 17} The first assignment of error is overruled.

### III. Sufficiency and Manifest Weight of the Evidence

{¶ 18} In his second and third assignments of error, Vandyne claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 19} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 20} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a

conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 21} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 22} Vandyne asserts that the evidence does not support the conclusion that he recklessly violated the terms of the CPO, as required for a conviction under R.C. 2919.27(A)(1). He argues that Penewit initially testified that she "had no idea" whether Vandyne had immediately departed the sheep barn after seeing her; she later testified that she was in the sheep barn for 45 minutes to an hour and that Vandyne "was there the whole time I was there and that's how long I was there." In contrast, Mendenhall and Vandyne testified that Vandyne immediately left the sheep barn in order to register April and

Mendenhall's daughter for the award ceremony by 6:15 p.m. Vandyne states: "It is impossible for Mr. Vandyne to not have left the sheep barn area to register [April's daughter] on time for the awards ceremony and also for him to have remained in the sheep barn area until the bunny scramble ended."

{¶ 23} Construing the evidence in the State's favor, there was sufficient evidence to support Vandyne's conviction. The State presented a certified copy of the CPO, which prohibited Vandyne from being within 500 feet of Penewit and required him to "depart immediately" if he accidentally came into contact with her. Both Penewit and her daughter testified that Vandyne was 50-100 feet from Penewit while in the sheep barn on July 24, 2012, and that he remained in the sheep barn during the bunny scramble, which lasted at least 45 minutes. That evidence was sufficient to prove that Vandyne recklessly violated the CPO, in violation of R.C. 2919.27(A)(1).

{¶ 24} The trial court expressed concern about Penewit's inconsistent testimony regarding whether Vandyne remained in the sheep barn during the entire bunny scramble. However, the trial court credited the testimony of Penewit's daughter, who also testified that Vandyne was present in the sheep barn for the entire bunny scramble. In doing so, the trial court chose not to believe Vandyne and Mendenhall's testimony that Vandyne left the sheep barn immediately after seeing Penewit in the barn. Because the trial court had the opportunity to observe and hear the witnesses, we give deference to the trial court's credibility determinations. Although the trial court could have elected to credit Vandyne and Mendenhall's testimony, we cannot say that the trial court, as the factfinder, lost its way in crediting the State's witnesses and finding Vandyne guilty of violating the CPO.

Vandyne's conviction was not against the manifest weight of the evidence.

**{¶ 25}** The second and third assignments of error are overruled.

*IV.   Conclusion*

**{¶ 26}** The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Marc T. Ross
Anthony W. Sullivan
Hon. Thomas E. Trempe