JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Luann Mitchell appeals from her conviction after a jury trial in Lyndhurst Municipal Court for the misdemeanor offense of theft.
 {¶ 2} Appellant challenges her conviction with the argument it was unsupported by sufficient evidence. She argues the City of Richmond Heights established neither that the item had value, nor that it was taken without the owner's consent, nor that appellant intended to deprive the owner of the item.
 {¶ 3} This court disagrees. Consequently, appellant's conviction is affirmed.
 {¶ 4} Appellant's conviction results from an incident that occurred on the morning of November 13, 2001. Steven Krotine, a long-time employee of the Cleveland Electric Illuminating Company ("CEI"), had received a list of electric meters he was assigned to replace during his shift that day. One of many on the list was the meter on the home located at 375 Balmoral Drive in the city of Richmond Heights, Ohio.
 {¶ 5} Krotine proceeded to that address and arrived at approximately 9:30 a.m. He parked his CEI company van in the drive, went to the front door with his work order, and rang the doorbell and knocked. After a short interval, having received no response, he returned to his van. Putting down the paperwork, he obtained his tools and picked up the new meter. He then proceeded to the side of the garage where the original meter was located.
 {¶ 6} Since Krotine was an experienced worker, he quickly replaced the original meter. He had completed his installation of the new meter and was preparing to walk back to his van with the original meter in one hand when he heard the garage door open. Suddenly, he was confronted by appellant, the homeowner.
 {¶ 7} According to Krotine, appellant began "yelling" at him, demanding that he "put back" the original meter. Krotine was taken aback by both appellant's angry demeanor and her demand, since, in his experience, this was "the first time" anyone had sought the reinstallation of the old meter. He protested that he and CEI "had the right to * * * do our meter changes."
 {¶ 8} Rather than listening to him, appellant "grabbed" the meter from his hand, and spun away with it. Krotine released his hold in order that appellant be spared from cutting her hands; he knew the meter covers were "pretty sharp." Once appellant had possession of the original meter, she took it into the garage.
 {¶ 9} Krotine returned to his van. Although he initially attempted to call his supervisor about the incident on his two-way radio, he was unable to raise any communication. Therefore, he proceeded to the Richmond Heights Police Department.
 {¶ 10} Krotine arrived at the police station at nearly the same time as did appellant. Appellant indicated she wanted to file an "assault complaint" against him. The dispatcher duly gave each of them a statement form to complete, but appellant began to argue with Krotine in the lobby. Consequently, the officer who arrived to inquire into the incident, David Oligny, separated them.
 {¶ 11} When Oligny spoke to appellant, she asserted the meter replacement had "caused substantial damage to her computer equipment," so she had gone outside to confront Krotine. She told Oligny she wanted Krotine to "put the old meter back on," and they had engaged in "an altercation" over the matter. Although she claimed Krotine had "assaulted" her during the altercation, she could not describe how he had done so. Moreover, when Oligny asked appellant" where [the original meter] was, * * * she said she had taken it into her house." Appellant declared she would retain possession of it for purposes of litigation against CEI.
 {¶ 12} By this time, Krotine's supervisor, Matthew Slagle, arrived at the police station. He, too, listened to appellant's version of the incident. Her claim that her computer equipment had suffered damage puzzled him; in his seven-year experience as an electrical engineer for CEI, his department had performed "thousands" of meter exchanges without any complaints of a power surge that caused computer damage.
 {¶ 13} In their subsequent investigation of the incident, the police officers discovered it had been witnessed by one of appellant's neighbors. Joseph Marino had been looking out of the front window of his home across the street from appellant's house when he saw the CEI van stop in appellant's driveway. Curious, he watched as the incident unfolded. His version corroborated Krotine's account.
 {¶ 14} Slagle's subsequent demands of appellant for the return of the original meter were rejected. As a result, on December 14, 2001, he made a formal complaint against appellant. Appellant was charged with theft in violation of Richmond Heights Codified Ordinance ("RHCO") 545.05.
 {¶ 15} Appellant's case proceeded to a jury trial. After hearing the testimony of the city's witnesses and of appellant herself, the jury found appellant guilty of the offense. The trial court suspended execution of appellant's ultimate sentence pending the outcome of this appeal.
 {¶ 16} Appellant presents the following single assignment of error:
 {¶ 17} "The trial court erred in denying Defendant's motion to dismiss as the City failed to establish, beyond a reasonable doubt, each and every element of the crime of theft."
 {¶ 18} Appellant argues the city provided insufficient evidence to support all of the essential elements of the offense; therefore, the trial court wrongly denied her motion for acquittal made at the close of the presentation of all the evidence. Appellant's argument is unpersuasive.
 {¶ 19} The sufficiency of evidence is a question of law, and is essentially, "a test of adequacy." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. The evidence must be viewed in a light most favorable to the prosecution to determine if reasonable minds can reach different conclusions as to whether the material elements of an offense are proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,1997-Ohio-372; State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 20} Appellant was charged with violation of RHCO 545.05(a)(1), which prohibits any person, "with purpose to deprive the owner of property or services," from "knowingly obtain[ing] or exert[ing] control over either the property or services * * * without the consent of the owner or person authorized to give consent." By its terms, RHCO 545.05(a)(1) does not contain an element that requires the property or services to have any particular value.
 {¶ 21} Krotine testified appellant "grabbed" the original meter out of his hands and took it into her house. Marino saw this interaction. Oligny testified appellant admitted taking the old meter. Slagle demonstrated that the meter belonged to CEI, and his testimony further proved that older meters often were resold, and that appellant refused to return it upon CEI's demand
 {¶ 22} Moreover, appellant herself provided evidence to establish the elements of the offense. She admitted she took possession of the original meter, and excused her refusal to return it with the explanations she wanted to have it "tested" and "because it had been used as an assault weapon" against her. She acknowledged the meter belonged to CEI. From her testimony, it is clear she neither gave it to the police nor returned it to CEI upon the company's demand
 {¶ 23} Based upon the testimony of the witnesses, therefore, reasonable minds could reach different conclusions as to whether all the essential elements of the offense of theft were proved beyond a reasonable doubt. State v. Martin, supra.
 {¶ 24} The trial court consequently properly denied appellant's motion for acquittal. Middleburg Heights v. Feltes,
Cuyahoga App. No. 81776, 2003-Ohio-3248; Cleveland v. Troupe
(Aug. 1, 1996), Cuyahoga App. No. 69324.
 {¶ 25} Accordingly, appellant's assignment of error is overruled.
 {¶ 26} Appellant's conviction is affirmed.
Blackmon, J., and Cooney, P.J., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.