OPINION
{¶ 1} Mary Heather Wantz was convicted after a bench trial in the Kettering Municipal Court of one count of petit theft, in violation of R.C. 2913.02, based on the theft of a dog. She was sentenced to 180 days of incarceration in the Montgomery County Jail, of which 165 days were suspended, and to pay a fine of $1,000 of which $800 was suspended. Wantz was further ordered to return the dog to her owner or to make restitution.
 {¶ 2} The state's evidence established the following facts:
 {¶ 3} On May 19, 2003, Angela Taylor was "dog-sitting" a chocolate Labrador, Ginger, at her home in Kettering, Ohio. Ginger belonged to Taylor's friend, Leslie Booher. During most of her stay at Taylor's residence, Ginger was in Taylor's fenced backyard along with Taylor's two dogs, a German Shepard and another chocolate Labrador, Sargent. Ginger and Sargent are siblings.
 {¶ 4} At approximately 3:30 p.m., Wantz came to Taylor's home at Taylor's invitation. Wantz brought Taylor's young niece with her, as well as her own dog, also a chocolate Labrador. (Wantz's dog is also named Ginger. Hereafter, we will use "Ginger" to refer to Booher's dog only.) Wantz's dog is the mother of Ginger and Sargent. Taylor had not expected Wantz to bring her dog with her, and she was concerned that Wantz would see Ginger in her yard and ask about the dog. As anticipated by Taylor, Wantz put her dog in the backyard, noticed Ginger, and asked Taylor to whom Ginger belonged. Taylor responded that Ginger belonged to Booher. Taylor was worried because she understood that Wantz and Booher did not get along.
 {¶ 5} Wantz visited with Taylor for several hours. On a couple of occasions, Wantz permitted the dogs to come onto the front porch of the house. Taylor asked Wantz to leave the dogs in the backyard. Sometime thereafter, Taylor called Booher from a telephone in her bathroom, informing Booher that Wantz was at her house and "there might be a problem." Wantz entered the bathroom and caused a commotion. Taylor terminated the call and then went down to her basement/garage, called Booher again, and asked Booher to come to her house to get her dog. Taylor did not remain on the telephone very long. While Taylor was talking with Booher, Taylor noticed through her garage door that Wantz was preparing to leave in her car with the child. Taylor saw "at least one" of the dogs with Wantz, although she indicated that she initially thought the dog was Wantz's dog.
 {¶ 6} Taylor hung up the telephone and went to the backyard to check on the dogs. Sargent and the German Shepard were locked in the yard; Wantz's dog and Ginger were gone. According to Taylor, Ginger had never tried to run away, and "if the gate is wide open she would not leave." When Taylor got to her backyard, Wantz had left, and her car was not in sight.
 {¶ 7} Taylor called Booher and informed her that her dog was missing. Taylor then drove around her neighborhood, looking for Ginger. After Booher arrived, Taylor and Booher filed a police report with the Kettering police and then drove to Wantz's home in Springboro, Ohio. Wantz was not there, so Taylor and Booher decided to wait for her. Booher contacted the Springboro police. Wantz arrived at her residence approximately one and one half to two hours after leaving Taylor's home. Ginger was not with her. Wantz was arrested by the Springboro police on unrelated charges. Due to Wantz's arrest, neither Taylor nor Booher had an opportunity to speak with Wantz.
 {¶ 8} Later that evening, Wantz telephoned Taylor and asked her "why did you have the police at my house." Taylor responded, "What did you do with the dog?" Wantz told her, "Pay back's a bitch." Booher testified that there were several reasons why Wantz might want to "pay her back," including the facts that she was the cause of Wantz being fired from her job and that she had socially seen the father of Wantz's child.
 {¶ 9} Despite efforts to locate Ginger, the dog has not been found.
 {¶ 10} On December 3, 2003, the trial court found Wantz guilty of petit theft. The court credited the testimony of Taylor and Booher, the state's witnesses. After setting forth the factual circumstances as described by Taylor and Booher, the court ruled:
 {¶ 11} "Had the State's evidence consisted of all the foregoing except the Defendant's `pay backs' remark, the Court is of the view that although there was some indication that the Defendant had involvement in the disappearance of Booher's dog, reasonable doubt was present. However, the Defendant's remark, which suggests the disappearance of the dog was meant as a means of imparting vengeance upon Booher, coupled with the other evidence, removed reasonable doubt. The Court finds the Defendant guilty of Petit Theft as charged."
 {¶ 12} Wantz asserts two assignments of error on appeal, which we will address together.
1. "THE EVIDENCE IN THE WITHIN CASE IS INSUFFICIENT TO SUPPORT A CONVICTION."
2. "THE COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In her assignments of error, Wantz claims that the state presented insufficient evidence that she had stolen the dog and that her conviction was against the manifest weight of the evidence. She argues that the statement, "pay back's a bitch," was arguably exculpatory and was insufficient to remove any reasonable doubt. Moreover she asserts that her conviction was against the manifest weight of the evidence in that the trial court "particularized a very general statement to support its hunch or suspicion" that Wantz had taken the dog. She further asserts that the statement was not an admission against interest but, rather, an "insouciant rejoinder," "one of calculated indifference to the pain or discomfort of one's opponent." The state responds that the evidence, if believed, was sufficient to establish all of the elements of the offense beyond a reasonable doubt and to support Wantz's conviction.
 {¶ 14} Criminal Rule 29(A) provides that the trial court shall enter a judgment of acquittal on one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of such offense or offenses. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997-Ohio-52, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, citing Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 15} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, 78 Ohio St.3d at 387, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 16} We have no problem finding sufficient evidence to support Wantz's conviction for the theft of Booher's labrador. Booher testified that Taylor alone had permission to have custody of Ginger during the relevant time. As stated above, Taylor testified that just prior to her going into her bathroom to call Booher, the four dogs were located in her fenced backyard with the gate closed. There is no evidence that Ginger had ever left the yard when the gate had been closed. To the contrary, Taylor testified that Ginger had never tried to run away and would not run away even with the gate open. Taylor further testified that while she was on the telephone with Booher in her basement, she saw Wantz loading her car. Taylor indicated that at least one of the dogs was in her car at that time. In addition, Taylor testified that she immediately went to check on the dogs in her backyard. She stated that her two dogs remained locked in the backyard but that Ginger and Wantz's dog were gone. The trial court reasonably credited the testimony of Taylor and Booher, and we give great deference to the trial court's determinations of credibility. See State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359. Based on this circumstantial evidence alone, a reasonable factfinder could conclude that, during the short period of time that Taylor was speaking with Booher on the telephone, Wantz had taken Ginger (as well as her own dog) from Taylor's backyard and had closed the gate behind her.
 {¶ 17} In addition, Wantz's alleged comment that "pay back's a bitch" supports the state's case that Wantz had taken the dog. Although the comment was made to Taylor rather than Booher directly, it was made in response to the question, "What did you do with the dog?" A reasonable interpretation of Wantz's "rejoinder" is that she had taken the dog as pay back for Booher's wrongful conduct against her. Booher had testified that Wantz had several reasons for wanting to "have pay backs," including that Booher had caused Wantz to be fired from a job and that she "spent a little bit [of] time with the father of her child." We therefore find no fault with the trial court's decision to give Wantz's statement such an interpretation. Accordingly, we find that there was ample evidence that Wantz had taken Ginger, without permission, while Taylor was on the telephone with Booher, in violation of R.C. 2913.02. Moreover, the evidence suggests that Wantz had done so as an act of vengeance against Booher. Accordingly, we conclude that Wantz's conviction is not against the manifest weight of the evidence. Given this determination, Wantz's conviction necessarily is based on legally sufficient evidence. See State v. Rutledge (June 1, 2001), Montgomery App. No. 18462.
 {¶ 18} The assignments of error are overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
Brogan, J. and Grady, J., concur.