JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant Alexei Pepple appeals from his conviction after a jury found him guilty of violating R.C. 2921.331, failure to comply with the order or signal of a police officer.
 {¶ 2} Appellant presents two assignments of error, in which he challenges both the sufficiency and the weight of the evidence presented to support his third-degree felony conviction. Appellant argues the evidence failed to prove his failure to obey the police signal created a "substantial risk of serious physical harm to persons or property."
 {¶ 3} Following a review of the officers' testimony, this court disagrees. Consequently, appellant's conviction is affirmed.
 {¶ 4} Appellant's conviction results from a series of events that took place on July 5, 2005.[1] On that morning, appellant's family reported to the Bay Village police their concern that appellant seemed suicidal. They provided a description of appellant and his vehicle, a Toyota Corolla. The police made efforts to locate appellant, but, a few hours later, appellant's family informed the police he had returned home. *Page 3 
 {¶ 5} Some time after noon that same day, appellant appeared at a service station located in the neighboring city of Westlake at the intersection of Crocker and Clemens Roads, near Interstate 90. Appellant chose a six-pack of beer and, when he took it to the counter, asked the cashier for some cigarettes. The cashier requested his identification to ensure appellant was of legal age to make the purchases.
 {¶ 6} Appellant provided his Ohio driver's license, told the cashier to "call the police," and left with the items, but without either receiving back his license or paying for the items. Appellant drove out of the service station slowly, thus permitting the cashier, as he made the call, to inform the Westlake police of the vehicle's description and license plate number. The cashier saw appellant turn his Corolla in the direction of Bay Village.
 {¶ 7} At approximately 4:10 p.m., Bay Village officer David Schultz received a dispatch to respond to a residence on a side street. Upon his arrival at the location, Schultz noticed appellant sitting in a Corolla, which was parked directly in front of the house. Schultz intended to ask appellant about his presence there, but by the time Schultz turned his patrol car around, appellant was driving away. Schultz followed, activating his lights and siren.
 {¶ 8} Appellant nevertheless continued on his way, proceeding at the speed limit onto Bradley Road and, ultimately, into the city of Westlake. Schultz at that time *Page 4 
received an order from his supervisor to cease his attempt to stop appellant, but watched as appellant turned southbound onto Crocker Road.
 {¶ 9} Westlake police monitored broadcasts from the Bay Village department. Westlake officers Eric Pasti and Timothy Hitch had just completed obtaining the service station cashier's report of appellant's involvement in a theft when they heard Schultz's report of appellant's movements. Since appellant was driving directly toward them, they decided to use their patrol car to block the "very, very busy intersection"[2] of Crocker and Clemens Roads, in an attempt to prevent appellant's progress. They activated their lights.
 {¶ 10} Although "traffic in all directions" halted as a result of the patrol car's placement, appellant remained the exception. He simply avoided the stopped traffic and turned southbound onto Crocker. Pasti, who was driving the patrol car, went in pursuit.
 {¶ 11} Appellant continued driving at the posted speed limit, swerving "back and forth" in a leisurely manner across the two southbound lanes of the roadway, despite the patrol car's lights and sirens behind him. He threw a beer bottle out of his window; the bottle narrowly missed the patrol car and "shattered" on the pavement. *Page 5 
 {¶ 12} Appellant then took the eastbound ramp onto the interstate. Upon merging onto the interstate, he remained in the right lane, but increased his speed to over seventy miles per hour ("mph"). Appellant's speed thereafter was "erratic," changing down to forty mph, then back to seventy mph. Appellant soon caught up to a van traveling ahead of him in his lane; it seemed to Hitch as though appellant "was going to rear end him." The van driver, however, moved over to the berm out of appellant's way.
 {¶ 13} Pasti and Hitch maintained radio contact with their colleagues during the pursuit. Officer Kevin Bielozer, in a patrol car in the vicinity of Columbia Road and the interstate, advised the others that he would take the eastbound ramp onto the freeway and deploy "stop sticks" when appellant's Corolla came along.
 {¶ 14} Because "there was too much other traffic" on the freeway, Bielozer had to take a position behind his patrol car, wait until he saw appellant's vehicle approaching, and then toss the implement into appellant's path. Appellant's Corolla was easy for Bielozer to spot; it was "weaving between the right-hand lane and the center lane" as it traveled.
 {¶ 15} Bielozer's timing was successful; appellant's Corolla ran over the "stop sticks" and three of its tires were punctured. Bielozer retrieved the "stop sticks" before he reentered his patrol car and joined in the pursuit. By now, his was the *Page 6 
third Westlake police cruiser with lights flashing and sirens activated behind appellant's Corolla.
 {¶ 16} Although appellant attempted to maintain his rate of travel, he was unable to do so; his car slowed as it approached the Clague Road exit. Appellant moved it onto the berm, but still did not stop. Instead, he continued slowly across the exit ramp. The Corolla finally came to rest on the shoulder of the interstate just past the exit ramp.
 {¶ 17} As the officers stopped their patrol cars, appellant appeared to surrender. He then turned and ran. Bielozer and Hitch tackled him and wrestled him to the ground. Appellant fought their efforts to subdue him by using his hands and feet. As a result of the struggle, Bielozer received bruises to his rib cage and Hitch suffered a hand injury; both officers required medical treatment.
 {¶ 18} Appellant subsequently was indicted in this case on one count of failure to comply with order or signal of a police officer, with a furthermore clause that alleged "the operation of [his] motor vehicle * * * caused a substantial risk of serious physical harm to persons or property." After considering the evidence, the jury found appellant guilty of the offense. The trial court ultimately sentenced appellant to a three-year term of community control sanctions.
 {¶ 19} Appellant challenges his conviction in this case with the following two assignments of error. *Page 7 
 {¶ 20} "I. The evidence was insufficient to sustain a finding of guilt as to failure to comply with the order or signal of a police officer with a further finding that such failure created a substantial risk of serious physical harm to persons or property.
 {¶ 21} "II. The verdict was against the manifest weight of the evidence."
 {¶ 22} In his first assignment of error, appellant asserts that the trial court erred in overruling his motions for acquittal, arguing that the state provided insufficient evidence to support all the elements alleged in the indictment. In his second, he asserts that under the circumstances, the jury improperly found him guilty of the offense.
 {¶ 23} A motion for acquittal should be denied if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261; State v. Dennis,79 Ohio St.3d 421, 1997-Ohio-372. The trial court is required to view the evidence and all reasonable inferences therefrom in a light most favorable to the prosecution. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 24} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. *Page 8 
 {¶ 25} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 26} In this case, the police officers testified that they began their pursuit of appellant's Corolla at the beginning of "rush hour." They further stated that despite the presence of "heavy traffic" in the area of Crocker and Clemens Roads, he ignored their efforts to induce him to stop his car. Instead, he not only continued to drive, but tossed a glass bottle into their path, and then proceeded onto an interstate highway with a posted speed limit of sixty mph.
 {¶ 27} Once on the interstate, appellant drove in an "erratic" manner. He swerved from lane to lane without regard to traffic traveling with him. Appellant also varied his speed, going from seventy mph down to forty, so that other vehicles began passing him and his pursuers, then accelerating again. At one point, appellant's car came so close to a vehicle in front of him that its driver believed it necessary to leave the roadway.
 {¶ 28} In addition, Bielozer found that to accurately throw the "stop sticks" to make appellant comply, he needed to stand behind his patrol car. Hitch testified that the situation was dangerous because, should appellant lose control, Bielozer did not have his cruiser to protect him from being directly struck by appellant's Corolla. An automobile in motion is an object possessing considerable force. *Page 9 
 {¶ 29} Finally, even after appellant's car became disabled, he drove it slowly across an exit ramp, in complete disregard for any traffic that sought to use the ramp. Appellant subsequently proved to have a blood-alcohol level of .205, which clearly lowered his decision-making skills.
 {¶ 30} From this evidence, the state clearly presented sufficient proof that appellant's operation of his vehicle created a substantial risk of physical harm to persons or property in violation of R.C. 2923.331(B) and (C)(5)(a)(ii). State v. Craig, Cuyahoga App. No. 86320,2006-Ohio-564, Tf19.
 {¶ 31} Furthermore, the testimony of the police officers was consistent and credible. Each indicated the traffic at that time was heavy, and that appellant's actions made him fear for the safety of other persons on the roads. This court, therefore, cannot conclude the jury lost its way in finding appellant guilty of the offense. Id.; State v. Gasiorowski (Mar. 7, 2001), Cuyahoga App. No. 80000; State v. Ford (Feb. 23, 1995), Cuyahoga App No. 67016. Only excellent police work prevented harm not just to others, but also to appellant himself.[3]
 {¶ 32} Accordingly, appellant's assignments of error are overruled.
 {¶ 33} Appellant's conviction is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and MARY J. BOYLE, J., CONCUR
[1] Appellant's case went to trial consolidated with his indictment in CR-470151; however, he was acquitted of the other charges, therefore, this appeal is not concerned with the evidence relating to that case.
[2] Quotes indicate trial testimony.
[3] Indeed, it seems more appropriate that appellant send a note of thanks to the police officers, rather than challenging his conviction for the offense. *Page 1