OPINION
{¶ 1} Defendant-appellant Philip Waters appeals from the imposition of a previously suspended jail sentence following the failure to comply with the terms of the suspended sentence. Waters contends that the trial court's decision to impose the *Page 2 
sentence is not supported by the evidence.
 {¶ 2} We conclude that there is sufficient evidence in the record to support the imposition of jail time and that the trial court's decision is not against the weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In March, 2006, the City of Dayton filed a complaint against Waters for Failure to Obey the Legal Order of a Housing Inspector in violation of R.C.G.O. 93.05 of the Revised Code of General Ordinances of the City of Dayton. Waters entered a no-contest plea to the charge and was sentenced to sixty days in jail and assessed a fine of five hundred dollars. All of the jail time, and four hundred dollars of the fine, was suspended on the condition that Waters abate the housing violations by September 1, 2006.
 {¶ 4} On September 25, 2006, the City filed a motion to impose sentence for failure to comply and abate the violations. Following a hearing, the trial court found that Waters had failed to comply. The trial court then imposed two hundred dollars of the suspended fine and set the matter for a status hearing on October 25, 2006.
 {¶ 5} Following the October status hearing, the trial court ordered Waters to abate the violations by November 15, 2006. However, the violations were not corrected, and on November 15, the trial court imposed another one hundred dollars of the suspended fine. The trial court then set a compliance date of December 15, 2006.
 {¶ 6} On January 26, 2007, the City again filed a motion to impose sentence based upon Waters's failure to correct the housing violations. A hearing was conducted in March, following which the trial court found that Waters had failed to correct the *Page 3 
housing violations. The trial court imposed five days of the previously suspended jail sentence. From this order, Waters appeals.
 II {¶ 7} Waters' First and Second assignments of error state as follows:
 {¶ 8} "THE COURT'S FINDING AND DECISION THAT DEFENDANT WAS IN CONTEMPT OF THE COURT'S NOVEMBER 15TH 2006 ORDER IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.
 {¶ 9} "THE COURT'S FINDING AND DECISION THAT DEFENDANT WAS IN CONTEMPT OF THE COURT'S NOVEMBER 15, 2006 ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Waters contends that the evidence in this matter does not support the trial court's finding that he failed to abate the violation.[1] In support, he claims that the evidence demonstrates that he made appropriate repairs to the roof prior to the December 15, 2006 compliance deadline. He further argues that the roof was re-damaged during a late December storm, but that the new damage cannot be the basis for imposing the suspended jail term or the fine.
 {¶ 11} At trial, Waters testified that he made appropriate repairs to the roof prior to the date set for compliance in December, 2006. Specifically, he testified that he and a group of friends nailed OSB (a plywood-like wood composite) to the studs in September. He further testified that the wood was covered with felt paper and that the *Page 4 
job was finished by installing rolled shingling over the felt paper. According to Waters, the roof was completed "about the second week of November [2006]." However, he testified that a mid-December wind storm re-damaged the roof.
 {¶ 12} The City presented the testimony of two of its inspectors: William Liles and James Montgomery. Montgomery testified that he has been the Chief Inspector for the City of Dayton for eight years. He testified that with the type of residence in question, Waters could comply with the housing code by applying OSB and then laying a felt paper on that and finishing with a roll out shingling which is properly nailed. However, he testified that the OSB must be covered immediately or it will be damaged if any water gets on it. He further testified that without the felt paper under the roll-out shingling, the roof would not comply with the housing code.
 {¶ 13} According to Liles, as of the November 15 compliance date, Waters had placed OSB on the roof and had then applied only roofing paper over that. Liles testified that the rolling paper was not properly nailed or sealed, which allowed it to be blown off the OSB during the December windstorm. Liles testified that the installation was substandard, and was not in compliance with the Dayton Housing Code.
 {¶ 14} This is a case in which the testimony conflicts. According to Waters, he complied with the violation compliance order. However, according to the testimony of Liles, the repairs made by Waters were not proper.
 {¶ 15} When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Dennis, 79 Ohio St.3d 421, 430, 1997-Ohio-372. However, when a *Page 5 
conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. State v.Martin (1983), 20 Ohio App.3d, 172, 175.
 {¶ 16} The evidence in this record demonstrates that Waters had adequate notice of the violation. There is evidence that, if believed, supports a finding that while Waters began repairs to the roof, he failed to complete the repairs in a manner that complied with the housing code. There is evidence that the OSB was exposed to water, which would render it unstable. Furthermore, Waters failed to contact the City any time between mid-November and mid-December, 2006 in order to schedule a final inspection of the alleged repairs as required by R.C.G.O. 93.05.02(A)(2) — a fact bolstering the City's claim that the repairs were not made. After reviewing the transcript of the hearing, we conclude that the trial court did not lose its way in finding that Waters failed to comply with the Housing Inspector's order.
 {¶ 17} Waters's First and Second assignments of error are overruled. *Page 6 
 III {¶ 18} Both of Waters's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and DONOVAN, JJ., concur.
[1] The only violation at issue in this appeal involves the roof of Waters's residence. According to the record, Waters was cited because the roof was damaged and deteriorated. The Housing Inspector's order required Waters to repair and/or replace the roof. *Page 1