JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Sammy Farraj, appeals his conviction of possession of drugs and drug trafficking. After reviewing the facts of the case and the pertinent law, we affirm.
 {¶ 2} On November 1, 2006, a Cuyahoga County Grand Jury indicted Farraj on one count of possession of drugs, in violation of R.C.2925.11(A), two counts of drug trafficking, in violation of R.C.2925.03(A)(1) and (A)(2), and one count of possessing criminal tools, in violation of R.C. 2923.24. He entered a plea of not guilty to the charges. On February 7, 2007, Farraj knowingly and voluntarily waived his constitutional right to a jury trial, in writing and on the record. A bench trial commenced that same day and the following testimony was offered at trial.
 {¶ 3} Detective Neal Hutchinson, of the Cleveland Police Vice Unit, testified that on August 30, 2006, he and a confidential reliable informant ("CI") were involved in a "buy bust" operation. Prior to the operation, he stated that another detective searched the CI to ensure that she did not have money or drugs on her. He stated that he then copied the "buy money" and gave the CI a $20 bill.[1]
 {¶ 4} He testified that he then drove the CI to West 47th Street and Storer, which is a "high drug area[,]" to make a "controlled drug buy." He stated that Detective Joseph Bovenzi conducted surveillance and Detective Bernard Norman and Detective Michael Rinkus were the "takedown"arresting officers. *Page 3 
 {¶ 5} Detective Hutchinson explained that a car approached the CI and, "[she] bought some crack, came back and gave it to me and they arrested the sellers."[2] He testified that Detective Norman gave him a bag of crack cocaine, which he confiscated from Farraj.[3] He stated that $95 and a cell phone were also seized from Farraj.[4] He further stated that the buy money was found on Barry Cartwright, who was with Farraj.[5]
 {¶ 6} On cross-examination, Detective Hutchinson testified that he could not see who drove the car and he did not see Farraj. He also stated that he could not see the CI after she approached the car.
 {¶ 7} Detective Norman, of the Cleveland Police Vice Unit, testified that Farraj sat in the passenger seat of the car and a surveillance officer "culled [him] out" as the one who made the drug sale. He stated that he and Detective Rinkus, "* * * stopped the car * * * and then we made the arrest. * * * I arrested [Farraj] * * *. And when I searched him after his arrest he had a small amount of crack cocaine in his little coin pocket on his pants." He stated that he gave the crack cocaine to Detective Hutchinson. He said that he also confiscated $95 and a cell phone from *Page 4 
Farraj.[6] He stated that another detective found the buy money in Cartwright's pocket.
 {¶ 8} He examined the crack cocaine seized from Farraj and stated, "* * * I don't know exactly what condition it was when I took it out of his pocket." He agreed that in his experience, the packaging and the dosage were consistent with the crack cocaine being for sale.
 {¶ 9} On cross-examination, Detective Norman did not recall if Farraj and Cartwright were transported to the Second District before they were taken to the Central Prison Unit ("CPU"), but he agreed that it was possible. He also did not recall searching Farraj at the Second District. He agreed that the amount of cocaine found on Farraj would not indicate if he was a "buyer or a user[.]"
 {¶ 10} Detective Rinkus, of the Cleveland Police Vice Unit, testified that he and Detective Norman were assigned to a takedown car to make arrests. He stated that they were directed by surveillance officers to stop the vehicle that Cartwright drove. He arrested and searched Cartwright and then found the buy money on him.[7] He stated that Farraj sat in the passenger seat and Detective Norman arrested him.
 {¶ 11} On cross-examination, Rinkus did not recall stopping at the Second District and searching Farraj and Cartwright. *Page 5 
 {¶ 12} Detective Bovenzi, of the Cleveland Police Vice Unit, testified that he conducted surveillance from approximately forty feet away. He described the scene as a dark and clear night, with street lights on in the area. He saw the CI at West 47th Street and Storer and then a black Cobalt stopped in front of her. He stated, "I observed the [CI] approach the passenger side window of the vehicle and there was a hand-to-hand exchange made between the person seated in the vehicle and the [CI]." Based on his training and experience a, "[d]rug purchase had been made."
 {¶ 13} He testified that the CI walked back to Detective Hutchinson's car. He stated that Detective Hutchinson then radioed that a drug transaction occurred. Detective Bovenzi said he followed Cartwright's car and notified the takedown unit of its location.
 {¶ 14} On cross-examination, he testified that he did not see the CI get into the car with Farraj and Cartwright.
 {¶ 15} Scott Miller, with the Cleveland Police Forensic Unit, testified that he analyzed the drug the CI bought and it tested positive for cocaine and weighed .10 grams.[8] He stated that he also analyzed the drug confiscated from Farraj and it tested positive for cocaine.[9] *Page 6 
 {¶ 16} On cross-examination, he said that he did not test for a cocaine base. He stated, "I can tell * * * that it's crack cocaine. * * * From appearance as by the definition in the statute * * * [u]nder Ohio Revised Code Section 2925 * * *. And in this case these were in rock and/or pebble form."
 {¶ 17} The state rested its case.[10] Farraj then moved for a Crim.R. 29 acquittal, arguing specifically, that there was no evidence that he used the money or cell phone found on him in an illegal manner and that there was no evidence that he participated in a hand-to-hand drug transaction nor possessed drugs. The state opposed his motion. The trial court granted Farraj's motion as to count four, possession of criminal tools, however the court denied the motion as to the rest of the counts.
 {¶ 18} Farraj then called Cartwright as his witness. Cartwright testified that on August 30, 2006, Farraj got into the front passenger seat of his car and they drove down Storer. He stated that they saw a lady, who he knew to be a drug user, waving her hand at them so he pulled over. He explained that she walked up to the passenger window and asked, "[d]o you got some [crack?] I said, no, but get in, I'm going to go take you to go get it." He stated that he did not see Farraj hand her anything. *Page 7 
 {¶ 19} Cartwright testified that she got in the back seat, handed him $20, and they drove up West 48th Street. He explained that he bought crack cocaine from another male with his own money, gave the lady the drugs, and then drove her back to West 47th and Storer. He agreed that the drug transaction occurred between him and the lady. He stated that Farraj was not involved in the transaction. He testified, "[Farraj] didn't do anything * * * and [was in the] wrong place at the wrong time with me."
 {¶ 20} He further stated that a police vehicle pulled up and detectives arrested them. He said that a detective searched him and found $20. He stated that a detective also searched Farraj. Cartwright testified that he and Farraj were then driven to the Second District, where they were both searched again in the garage. He stated, "I seen one detective had something, like a plastic bag, * * * it looked like it was probably some residue or something. * * * So the other guy was like, it's your buddy's, found it on him * * *."
 {¶ 21} On cross-examination, Cartwright testified, "[t]hat was the first time me selling drugs with [Farraj] that night."
 {¶ 22} Lastly, Farraj testified on his own behalf that after he got in Cartwright's car, they drove down West 47th Street and saw a lady waving at them. He stated that when they pulled over, she walked to the passenger window and asked for a *Page 8 
"[twenty] piece of rock." He said that the lady got in the car and she handed money to Cartwright. Farraj stated that he did not hand anything to her.
 {¶ 23} He testified that Cartwright drove around the corner where he completed a drug transaction with another male. He stated that Cartwright gave the lady crack cocaine and then returned her to West 47th Street and Storer. He testified that he did not help Cartwright sell cocaine.
 {¶ 24} He also testified that after he and Cartwright drove away, detectives arrested them. Farraj stated that the detectives drove them to a police station garage where they were searched. He explained, "[w]hile I'm answering this guy this other cop, other vice is going in my pocket, while another third vice is asking me more questions. Okay. Things is getting hectic. All of a sudden a bag of dupe [sic] comes up." Farraj stated that the detectives told him that the crack cocaine came out of his pocket, but he said that it did not belong to him. He stated that they were then driven to CPU.
 {¶ 25} On cross-examination, Farraj agreed that he sat in the passenger seat of the car and Cartwright drove it. He testified that he did not know Cartwright sold drugs until that night.
 {¶ 26} Farraj rested his case and renewed his Crim.R. 29 motion, which the court denied. After deliberation, the court found him guilty of count one, possession of drugs, in violation of R.C. 2925.11(A), and count three, drug trafficking, in violation *Page 9 
of R.C. 2925.03(A)(2). The court, however, found him not guilty of count two, drug trafficking, in violation of R.C. 2925.03(A)(1).
 {¶ 27} The court stated as to count two, drug trafficking: "[t]he evidence is actually a little more stronger [sic] that [the hand-to-hand transaction] was conducted with the driver, * * * because he ended up with the money[.]
 {¶ 28} "So I don't find that the state has proved that issue beyond a reasonable doubt[.]"
 {¶ 29} "But we're left with another count of drug trafficking, which is in [c]ount [three].
 {¶ 30} "* * *
 {¶ 31} "The mere presence [of Farraj] without some other activity or something in furtherance of the conspiracy or the aiding and abetting would be insufficient to demonstrate an aider and abettor * * *.
 {¶ 32} "But here we do have more. There was additional cocaine found, * * * and even by the defendant's own admission there was a deal going on.
 {¶ 33} "I think it is logical to find that he was in fact an aider and abettor, having found cocaine on him, with the codefendant having sold it, transported someone, someone around, transported the cocaine around * * *.
 {¶ 34} "And I further find that the state proved beyond a reasonable doubt the possession of cocaine * * *." *Page 10 
 {¶ 35} On February 21, 2007, the court sentenced Farraj to six months in prison for possession of drugs and nine months in prison for drug trafficking, to run concurrently with one another. Thus, Farraj was sentenced to a total of nine months in prison. The court also informed Farraj that he would be subject to three years of postrelease control.
 {¶ 36} It is from this judgment that Farraj appeals, raising the following two assignments of error:
 {¶ 37} "[1.] The trial court erred in denying defendant-appellant's Crim.R. 29(A) motion for acquittal on the charges of drug possession and drug trafficking.
 {¶ 38} "[2.] The verdict of guilt on the charges of drug possession and drug trafficking were against the manifest weight of the evidence."
 {¶ 39} In his first assignment of error, Farraj argues that the trial court erred when it failed to grant his motion for judgment of acquittal pursuant to Crim.R. 29. We disagree.
 {¶ 40} Under Crim.R. 29(A), a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, at syllabus. A motion for judgment of acquittal under Crim.R. 29 should only be granted where reasonable minds could not fail to find reasonable doubt. Id. at 263. *Page 11 
 {¶ 41} The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on sufficiency of the evidence to support a conviction. SeeState v. Bell (May 26, 1994), 8th Dist. No. 65356, 1994 Ohio App. LEXIS 2291. In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio explained that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id.
 {¶ 42} The court further explained:
 {¶ 43} "[w]ith respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.Tibbs v. Florida (1982), 457 U.S. 31, 45 * * *, citing Jackson v.Virginia (1979), 443 U.S. 307 * * *." (Parallel citations omitted.) Id. at 386-387. *Page 12 
 {¶ 44} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 45} Farraj was convicted of one count of possession of drugs, in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, possess, or use a controlled substance." He was also convicted of drug trafficking, in violation of R.C. 2925.03(A)(2), which provides, "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 46} The court convicted Farraj of drug trafficking under the theory that he aided and abetted Cartwright. The complicity statute, under R.C.2923.03(A)(2), provides in pertinent part, "[n]o person, acting with the kind of culpability required for *Page 13 
the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"
 {¶ 47} The Supreme Court of Ohio has stated that mere presence of an accused at the scene of the crime is not sufficient proof, in and of itself, that the accused was an aider and abettor. State v. Widner
(1982) 69 Ohio St.2d 267, 269. Even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. State v. Jordan,168 Ohio App.3d 202, 2006-Ohio-538, at_8. "[T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principle in the commission of the crime, and that the defendant shared in the criminal intent of the principle. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001), 93 Ohio St.3d 240, 245-246.
 {¶ 48} Farraj argues that there is insufficient evidence to prove that he "knowingly possessed" the crack cocaine. He also contends that the state did not prove the weight of the crack cocaine found on him. He further asserts that there is insufficient evidence to prove that he "aided and abetted" Cartwright in drug trafficking.
 {¶ 49} Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or *Page 14 
will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Under R.C. 2925.01(K), "`possess' or `possession' means, having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 50} A review of the record indicates that there is sufficient evidence to support Farraj's convictions. The evidence shows that on August 30, 2006, the CI was searched prior to the buy bust operation to ensure that there was no contraband or other money on her. Detective Hutchinson copied the buy money and then gave the it to the CI to purchase a rock of crack cocaine.
 {¶ 51} At West 47th Street and Storer, Cartwright pulled his car over and the CI walked to the passenger side of the car where Farraj sat. Whether Farraj and Cartwright drove the CI to get crack cocaine or the drug transaction occurred on the street, Farraj knew that the CI wanted to buy cocaine and that a drug transaction would occur. Farraj heard the CI ask for crack cocaine and then Cartwright said he would take her to get it.
 {¶ 52} When the CI returned to Detective Hutchinson's car, he confiscated a rock of crack cocaine from her. He notified the takedown unit to arrest Farraj and Cartwright. Detective Rinkus searched Cartwright and he found the buy money. *Page 15 
Detective Norman searched Farraj and found a bag of crack cocaine. The lab report indicated that the crack cocaine weighed .37 grams.
 {¶ 53} Thus, reasonable inferences can be drawn that Farraj assisted, encouraged, cooperated with, advised, or incited Cartwright in the sale of drugs, and that Farraj shared in Cartwright's criminal intent. Therefore, after viewing the evidence in the light most favorable to the state, we determine that there is sufficient evidence to convict Farraj of one count of possession of drugs and one count of drug trafficking. We determine that the trial court did not err when it denied Farraj's Crim.R. 29 motion for acquittal.
 {¶ 54} Accordingly, Farraj's first assignment of error is overruled.
 {¶ 55} In his second assignment of error, Farraj contends that the jury verdict was against the manifest weight of the evidence. We conclude that this argument lacks merit.
 {¶ 56} With respect to manifest weight of the evidence, the Supreme Court has stated:
 {¶ 57} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [Robinson, supra, at 487]. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It *Page 16 
indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducingbelief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 58} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs, supra, at 42]. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." Thompkins, supra, at 387.
 {¶ 59} In addition, when assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact. State v. Awan (1986),22 Ohio St.3d 120, 123. The factfinder is free to believe *Page 17 
all, part, or none of the testimony of each witness appearing before it.Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3.
 {¶ 60} With this standard in mind, we conclude that Farraj's convictions were not against the manifest weight of the evidence. Detective Hutchinson copied the buy money and then gave the it to the CI to purchase a rock of crack cocaine. Detective Bovenzi stated that he saw the CI approach the passenger side of the vehicle where Farraj sat. Cartwright and Farraj explained that a drug transaction occurred with the CI. Detective Hutchinson stated that the CI returned to his car with crack cocaine. Detective Norman searched Farraj and found a bag of crack cocaine. Detective Rinkus searched Cartwright and found the buy money.
 {¶ 61} However, Farraj maintains that the detectives were not credible because there were conflicts in their testimony and they could not remember details of the arrest.
 {¶ 62} The judge, as the factfinder, was free to believe all or part of the testimony presented at trial. After reviewing the testimony, we cannot conclude that the trier of fact lost its way. There was not such a "manifest miscarriage of justice" that the convictions should be reversed and a new trial ordered.
 {¶ 63} Thus, Farraj's second assignment of error is overruled. *Page 18 
 {¶ 64} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR.
[1] The state marked the copied buy money as Exhibit 2.
[2] The state marked the crack cocaine as Exhibit 3.
[3] The state marked the crack cocaine as Exhibit 4.
[4] The state marked the cell phone as Exhibit 5 and a copy of the property room log indicating that Farraj had $95 on him as Exhibit 6.
[5] Cartwright was a codefendant and was previously convicted on this case.
[6] Detective Norman made an in-court identification of Farraj.
[7] The state marked the buy money as Exhibit 1.
[8] The state marked a copy of the lab report as Exhibit 7.
[9] The state marked a copy of the lab report as Exhibit 8. Although not testified to, the report indicated that the cocaine weighed .37 grams.
[10] The court admitted into evidence the state's exhibits 1-8. *Page 1