[Cite as *State v. Gaines*, 2012-Ohio-2773.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97497**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HAKIM GAINES

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551049

**BEFORE:** Rocco, J., Celebrezze, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Jeffrey S. Schnatter
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Hakim Gaines appeals from his convictions after a jury found him guilty of carrying a concealed weapon ("CCW"), having a weapon while under disability ("HWUD"), and improper discharge of a firearm into a habitation ("improper discharge").

{¶2} Gaines presents one assignment of error that purports to assert that none of his convictions is supported by either sufficient evidence or by the manifest weight of the evidence; in actuality, however, he presents a challenge only to his conviction for improper discharge. Upon a review of the record, this court finds his claim lacks merit. Consequently, his convictions are affirmed.

{¶3} Gaines's convictions result from an incident that occurred at approximately 10:00 p.m. on the night of June 1, 2011. According to the testimony of the state's witnesses, the following circumstances surrounded the incident.

{¶4} Cleveland police detective Dwayne Duke, of the Narcotics/Gang unit, sat in an undercover vehicle at the corner of Dunlap Avenue and E. 103rd Street, observing the activity occurring a block away on the front porch of the duplex located at 3659 E. 103rd, which was on the street's corner with Aetna Avenue. Duke watched a group of nearly a dozen young people who seemed to be engaged in what he believed to be an illegal dice game. Duke reported his observation on his unit's tactical radio channel in order to summon other members to the location.

{¶5} While he was doing so, Duke looked in his rearview mirror to see a white car approaching. The car's headlights were not illuminated. The car's driver parked on Dunlap Avenue a few lengths behind Duke's vehicle, then the driver and his passenger exited and proceeded to cross Dunlap. Duke noticed that the driver was a taller individual than his passenger and thought they were headed toward the porch of the house he was watching.

{¶6} Shortly thereafter, however, as Duke saw the two men crossing the field "right in front of" him, they both stopped "for no more than a couple of seconds." Both men turned to take a few steps back toward their car, then stopped again. At that point, the driver "pull[ed] out an object" that appeared to Duke to be a gun. The driver handed it to the other man, who was later identified as Gaines.

{¶7} Upon seeing this, Duke informed his unit members what he was witnessing, then switched to a normal radio channel to tell the dispatcher to "[g]et any cars in the area to assist." Duke remained on the radio, providing updates. Duke saw Gaines "turn towards the house, the gun up * * * , he didn't aim it." Gaines just pointed it in the direction of the duplex and fired twice. Duke saw the blasts and heard the reports.

{¶8} The people on the duplex's porch "scattered." Duke saw the men return to the car behind him and flee the area by turning into a driveway and backing up to proceed westbound on Dunlap. By that time, one of Duke's colleagues passed Duke's location and took up the chase.

{¶9} The driver eventually turned the white car onto E. 93rd Street. One of the detectives saw Gaines leaning out of the passenger side window before the car ultimately crashed into a pole in a store parking lot. The driver "bailed" and fled.

{¶10} Before Gaines could escape, he was surrounded by police officers; Gaines appeared to be inebriated. Gaines was arrested. When Duke arrived at the scene of the crash, he identified Gaines as the man he saw fire the gun toward the duplex. One of the detectives found a gun laying in the grass in the area where Gaines had been seen leaning from the car window.

{¶11} The following day, Duke returned to the duplex, where he spoke to Linda Banks, the resident of the upper portion of the duplex, and took photos of the area and of apparent damage to the side of the house. Although Banks had neither known of the incident nor previously noticed what appeared to be two holes in the siding of the duplex, Duke believed the holes were "fresh" ones that had been made by the bullets he saw fired.

{¶12} Gaines subsequently was indicted on three counts, charged with CCW, HWUD, and improper discharge with firearm specifications. His case proceeded to a jury trial. After considering the evidence, the jury found Gaines guilty on each count. The trial court ultimately imposed a prison sentence on Gaines that totaled seven years.

{¶13} Gaines challenges his convictions with one assignment of error.

**"I.   The trial court erred by entering convictions which were unsupported by sufficient evidence, and against the manifest weight of the evidence."**

{¶14} Despite the phraseology of his assignment of error, Gaines claims the trial court improperly entered judgment on only his conviction for improper discharge with firearm specifications; he asserts that it was not supported by either sufficient evidence or the manifest weight of the evidence.

{¶15} As a preliminary matter, this court notes that the sufficiency of the evidence produced by the state and the manifest weight of the evidence adduced at trial are legally distinct issues. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The test for sufficiency requires a determination of whether the state has met its burden of production at trial, while a manifest weight challenge questions whether the state has met its burden of persuasion. *Id*. at 390.

{¶16} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Thompkins*. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*.; *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096.

{¶17} When a defendant asserts that his conviction is against the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences from it, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id*. This court must remain mindful, moreover, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶18} In order to be convicted of improper discharge, one must knowingly, and without privilege to do so, "[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * * ." R.C. 2923.161(A)(1). Gaines asserts the state's evidence proved neither that he acted "knowingly," nor that any bullets actually were fired. This court disagrees.

{¶19} Duke observed Gaines take the gun from his companion and point the barrel in the direction of Banks's house. Duke heard shots fired at the same time as he saw the gun twice blast out its contents. Banks testified she had lived in the second floor of the duplex for twenty-six years. Det. Robinson testified the defects he saw in the side of Banks's house were bullet holes. When viewed in a light most favorable to the prosecution, this testimony constituted sufficient evidence to convince an average mind of Gaines's guilt of improper discharge beyond a reasonable doubt. *State v. Brady*, 8th Dist. No. 92910, 2010-Ohio-242*; State v. Hayes*, 8th Dist. No. 94697, 2011-Ohio-605.

{¶20} Duke's testimony concerning his observations found corroboration in the physical evidence. His commentary to his colleagues while the incident was occurring

was introduced at trial, the side of Banks's house that Gaines had been facing showed "fresh" holes that Duke and Det. Robinson both believed had been made by the shooting, and a gun was found in the area where, during the car chase, Gaines had been observed hanging out of the car window. In his testimony, the forensic analyst provided several reasons to explain why gunshot residue might not be present on Gaines's hands two hours after the incident.

{¶21} Under such circumstances, this court cannot find the jury lost its way in finding that Gaines committed the crime of improper discharge with firearm specifications. *Id*.; *Brady*; *State v. Gilcreast*, 9th Dist. No. 21533, 2003-Ohio-7177. Since the manifest weight of the evidence, therefore, also supports Gaines's convictions, his assignment of error is overruled.

{¶22} Gaines's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR