[Cite as *State v. Szloh*, 2013-Ohio-1073.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2012-CA-13 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 11-CR-411 |
| v. | : | |
| | : | |
| BRYAN M. SZLOH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2013.

. . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by NATHANIEL R. LUKEN, Atty. Reg.
#0086864, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

SEAN J. VALLONE, Atty. Reg. #0064053, 5 Irongate Park Drive, Suite A, Centerville, Ohio
45459
      Attorney for Defendant-Appellant

BRYAN M. SZLOH, #656-859, North Central Correctional Institution, 670 Marion
Williamsport Road, Post Office Box 1812, Marion, Ohio 43301
      Defendant-Appellant, *pro se*

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Bryan Szloh was convicted of five counts of Violating a Protection Order.   The trial court sentenced Szloh to three years in prison.   Szloh's appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that after reviewing the record and the applicable law, he found no potentially meritorious issues for appeal. Counsel set forth one potential assignment of error, which counsel has concluded is frivolous:   that the trial court erred by failing to advise Szloh regarding post-release control prior to sentencing.

{¶ 2}   By entry, we informed Szloh that his attorney had filed an *Anders* brief on his behalf, and granted him 60 days from that date within which to file a pro se brief.   Szloh's pro se brief was not timely filed, and was not properly filed with the Greene County Clerk of Courts.   Nevertheless, we accepted his brief as filed.

{¶ 3}   Although Szloh fails to set forth any assignments of error, as required by App.R. 16(A)(3), Szloh appears to be raising several arguments, which we have re-cast as assignments of error.


## I.   The Protection Order

{¶ 4}   In 2009, Josephine Miller (formerly Szloh) and her mother, Marilyn Miller, were granted a protection order against Bryan Szloh.   Of relevance hereto, the protection order states:

> Respondent [Szloh] shall not initiate or have any contact with the
>
> protected persons named in this order, or their residences, businesses, places of
>
> employment, schools, daycare centers, or childcare providers.   Contact

includes but is not limited to telephone, fax, e-mail, voice mail, delivery service, writings, or communication by any other means, in person or through another person. Respondent may not violate this order even with the permission of the protected person.

{¶ 5} Szloh contacted the two women a total of five times in June and July 2011. Following an investigation, he was indicted on five counts of Violating a Protection Order, in violation of R.C. 2919.27(A)(1). Each count was a felony of the fifth degree because Szloh had been previously convicted of violating the same protection order.

## II. The Course of Proceedings

{¶ 6} The trial court ordered Szloh to undergo a "Competency/Sanity Evaluation" at the Forensic Psychiatry Center for Western Ohio in order to evaluate his competency to stand trial. The evaluation, conducted by a licensed clinical psychologist, reveals that Szloh has a college degree in Mechanical Engineering as well as a Master of Business Administration degree. The psychologist notes that Szloh "adamantly disputes the legality of the divorce because he never signed the proper paperwork," and did not sign any document that would finalize the divorce. Szloh further "expressed doubt that [his mother] is really deceased because he finds it hard to believe that the jail staff would not have automatically released him to let him attend her funeral."[1] The evaluating psychologist noted that "Mr. Szloh was polite and generally cooperative, though he refused to provide certain information because he felt it was irrelevant to the purpose of the evaluation or because he did not want to make statements

---

[1] Szloh was incarcerated at the time of the evaluation, as well as at the time of his mother's death.

that could possibly be used against him in court."

{¶ 7}  The evaluating psychologist opined, based upon testing and interviewing, that Szloh is not "mentally retarded or severely mentally ill as defined in O.R.C. 5122.01." The psychologist further opined that Szloh has moderate depression and that he "has significant difficulty accepting the failure of his marriage and the death of his mother, and he generates unreasonable arguments to maintain his denial."  However, the psychologist stated that Szloh is not delusional and that Szloh understands the legal proceedings and is capable of assisting in his defense.  Thus, the psychologist found Szloh competent to stand trial. Following a hearing on the issue of competency, the trial court determined that Szloh was competent to stand trial.

{¶ 8}  A jury trial was conducted during which the following evidence was presented.

{¶ 9}  At trial, the parties stipulated that Szloh had been previously convicted of violating the protection order.  The State presented the testimony of Josephine Miller, who testified that she had been married to Szloh, but that they were divorced in 2009 after nearly ten years of marriage.  She testified that she obtained the Protection Order through the Greene County Common Pleas Court, Domestic Relations Division.  Ms. Miller testified that her mother, Marilyn Miller, is also a protected person under the terms of the Order.  A certified copy of the Order was admitted into evidence.

{¶ 10}  Josephine Miller testified that on July 1, 2011, she received a voice mail message on her cellular telephone while she was in Fairborn, Greene County, Ohio.  She testified that she recognized the voice as that of Mr. Szloh, and she recognized the number as

being associated with Szloh's father. She testified that she reported the incident to the police. A recording of the voice mail message was admitted into evidence.

{¶ 11} Marilyn Miller testified that Szloh is her former son-in-law. She testified that she was involved with obtaining the protection order, and that she is a protected person under the terms of the order. She testified that she received a telephone call at her home in Beavercreek, Greene County, Ohio on June 30, 2011. She testified that she recognized the caller's voice as Szloh. A photograph of the caller identification display from her telephone was introduced into evidence. Marilyn Miller also testified that Szloh called her twice on July 1. He left a voice mail message with the second call. A photograph of the caller identification display for these calls was entered into evidence as well as a recording of the later voice mail message. Ms. Miller testified that Szloh contacted her by telephone on July 8. A photograph of her caller identification display was introduced into evidence regarding this call. Finally, Szloh left a voice mail message on Ms. Miller's telephone on July 10. A recording of that call was introduced into evidence. Ms. Miller testified that she contacted the Beavercreek Police Department regarding the contacts.

{¶ 12} The State introduced the testimony of three police officers who were dispatched to investigate the subject calls. The testimony of the officers established that they were responsible for taking the photographs of Marilyn Miller's caller identification display as well as recording the voice mails received by both women. Two of the officers testified that they contacted Szloh and informed him that he was violating the protection order by contacting the two women.

{¶ 13} Detective Holcomb of the Fairborn Police Department testified that he

conducted a follow-up investigation of the call to Josephine Miller. He testified that he made a telephone call to the number listed as having called Ms. Miller. Holcomb testified that he spoke to a male, who identified himself as Bryan Szloh, and that Holcomb identified himself as a detective with the Fairborn Police Department. According to Holcomb, Szloh denied the existence of the protection order, but admitted that he wrote a letter asking the trial court to dismiss the order. Holcomb testified that he advised Szloh to do an on-line records search of the "Greene County Common Pleas Court Records Section and verify that there was a protection order." Holcomb testified that Szloh then asked him to "s*ck my big, fat f*cking d*ck," and hung up.

{¶ 14} Szloh testified in his defense. He denied that he and Josephine Miller were no longer married, stating that he did not "sign any type of divorce agreement." Szloh also testified that he received a copy of the protection order, and that he "glanced at it." He testified that "for the most part" he understood that the order prohibited contact with the women, but that no one ever explained it to him. He also testified that part of the order "looked like it was a little ambiguous." Specifically, he identified the portions he believed to be ambiguous, and testified that these portions caused him to believe he could have contact with his ex-wife. Those portions state:

> If you go near the petitioner or the alleged victim, even with the petitioner's or alleged victim's consent, you may be arrested.

> If you and the petitioner want to resume your relationship, you must ask the Court to modify or terminate this protection order.

{¶ 15} When asked what in those provisions led him to believe he could resume

contact with his ex-wife, Szloh responded, "I thought that by me contacting her and seeing if she wanted to resume the relationship, we both can go to Court and say hey, you know, we disagree with this document and we need to talk in order to patch things up between us so we can terminate this order." Szloh admitted he contacted both women on the dates in question stating that he had just been released from jail and "wanted to touch base with [Josephine], tell her I was released and I was staying with my dad in Cleveland for the time being."

{¶ 16} On cross-examination, Szloh admitted that he had a prior conviction for violating the protection order, and that he was aware of the terms of the order at that time. When asked about his confusion over the terms of the protection order, Szloh replied, "Well, I guess I'm just confused that there is a protection order there since obviously [Josephine] is not satisfied in our marriage, and I think the only way to rectify such a situation is to communicate with your spouse, and if you can't communicate with your spouse, I mean, I don't understand it. It makes no sense."

{¶ 17} Following trial, Szloh was convicted on all counts. He waived his right to have the trial court impose community control sanctions on the grounds that he did not agree with the conditions of the sanctions and did not think he would follow them. Thus, pursuant to agreement between Szloh and the State, the trial court sentenced him to twelve months on each count. The sentences on counts one, two and three were ordered to be served consecutively, while Counts Four and Five were to run concurrently with the others, for a total incarceration of three years.

{¶ 18} From his conviction and sentence, Szloh appeals.

### III.   The Protection Order Was Valid

**{¶ 19}**   Szloh's First Assignment of Error provides as follows:

THE TRIAL COURT ERRED IN ENFORCING AN INVALID

PROTECTION ORDER.

**{¶ 20}**   Szloh contends that the protection order is not valid because "there has been no abuse between [himself] and Josephine and they are still legally married despite the fact that the divorce process has been started."   He further contends that he and Josephine resided in Montgomery County during the marriage, so that the Greene County courts did not have jurisdiction to issue a protection order.   He also stated that he does not believe that Josephine does not reside in Greene County, because she has not filed a "formal separation stating that she is living somewhere else."

**{¶ 21}**   We first note that there is nothing in this record to indicate that the protection order is invalid due to lack of jurisdiction, or any other reason.   Furthermore, this case does not involve an appeal from the protection order, which was issued in 2009.   Any complaints Szloh has with regard to the validity of the order could, and should, have been raised in a direct appeal from that order.   Thus, this argument is barred by the doctrine of res judicata.

**{¶ 22}**   To the extent that Szloh argues that he is entitled to ignore the protection order, because he is merely attempting to reconcile with Josephine, we note that we have previously held that "[a]n order of a court must be obeyed unless and until a court finds that it is invalid or rescinds it."   *Xenia v. Berry*, 2d Dist. Greene No. 93-CA-39, 1994 WL 12494, *3 (Jan. 19, 1994).   "The protective order was issued by the court, and neither the appellant nor * * * the complaining witness, had any right under the law to waive it or ignore it, no matter

what the conduct of the parties may have been." *Id.* Whether or not Szloh attempted to waive the provisions of the order, it is clear that the Millers did not waive their right to the protection of that order, and they were entitled to that protection.

**{¶ 23}** Szloh's First Assignment of Error has no arguable merit.

### IV. Evidence in the Record Supports the Conviction

**{¶ 24}** Szloh's Second Assignment of Error is as follows:

THE CONVICTION IS NOT SUPPORTED BY THE EVIDENCE.

**{¶ 25}** Szloh contends that the State failed to prove that he acted with the requisite intent to violate the protection order. In support, he claims that "the five phone calls that were placed were not a reckless violation of the protection order [but, rather] the phone calls were an attempt by the Appellant to repair his marriage to Josephine [Miller]. A letter was written by the Appellant to the Greene County Domestic Relations Judge * * * in an attempt to ask the court for another hearing on the protection order, but Appellant did not receive a copy back. * * * The phone calls were made from Westlake OH to Beavercreek, OH; a distance of about 210 miles or a 3 1/2 hour car drive separate the cities. Even if the phone calls were of a threatening nature, which they were not, the Appellant did not pose an immediate physical threat to Josephine or Marilyn."

**{¶ 26}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009–Ohio–525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541

(1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

**{¶ 27}** Szloh was convicted of Violating a Protection Order. That offense is codified at R.C. 2919.27(A)(1), which states, in relevant part, that "no person shall recklessly violate the terms of any * * * protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code."

**{¶ 28}** "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶ 29}** The evidence establishes that Szloh contacted both women. It further establishes that, despite his claims to the contrary, he was aware of the existence of the protection order, as evidenced by his attempt to have the trial court set it aside. Also, his own testimony establishes that he was aware of the terms of the order when he was convicted of a previous violation.

**{¶ 30}** With regard to his claim that he was confused over the terms of the order, in regard to his ability to contact the women, we note that the portions he claims are confusing are part of the following passage:

> Only the Court can change this order. The Petitioner/Alleged Victim

cannot give you legal permission to change this order. If you go near the Petitioner/Alleged Victim, even with the Petitioner's/Alleged Victim's consent, you may be arrested. If you and the Petitioner/Alleged Victim want to resume your relationship you must ask the Court to modify or terminate this Protection Order. Unless the Court modifies or terminates this order, you can be arrested for violating this Protection Order. **You act at your own risk if you disregard this Warning.** (Emphasis sic.)

**{¶ 31}** Szloh's testimony on cross-examination establishes that he was not confused by the actual requirements of the protection order. To the contrary, his testimony establishes that he simply believes that he should not be bound by the terms of the order, because he believes that he should be permitted to contact his ex-wife in order to reconcile with her.

**{¶ 32}** In sum, Szloh's testimony establishes that he was aware of the prohibition against contact, as well as the possible consequences of violating the order, and that despite his knowledge, he still elected to contact the Millers. Thus, the jury could have found the essential element of recklessness proven beyond a reasonable doubt. We conclude that the evidence, when construed in a light most favorable to the State, was sufficient to support the convictions.

**{¶ 33}** Szloh's Second Assignment of Error has no arguable merit.

**V. The Trial Court Had No Duty to Advise Szloh of Post-Release Control Before Szloh Expressed his View that He Would Not Be Able to Abide by Terms of Community Control Sanctions**

{¶ 34}  The Third Assignment of Error, as raised by appellate counsel as a potential, but meritless, assignment of error in the *Anders* brief, provides as follow:

THE TRIAL COURT ERRED WHEN IT FAILED TO ADVISE SZLOH REGARDING POST-RELEASE CONTROL PRIOR TO IMPOSING SENTENCE.

{¶ 35}  Szloh contends that it was error for the trial court to fail to advise him about the conditions of post-release control before the trial court imposed sentence.

{¶ 36}  During the sentencing hearing, the trial court noted that Szloh would be subject to mandatory community control pursuant to R.C. 2929.13, but that Szloh did not believe that he could abide by the terms of the community control sanctions because he believed them too harsh for the offense.  Szloh acknowledged this fact on the record.  The State and Szloh also agreed to a three-year prison term as a substitute for community control, given Szloh's preemptive refusal to follow the terms for community control.  The trial court then accepted Szloh's waiver of community control, and imposed the three-year agreed sentence.  Then the trial court proceeded to advise Szloh regarding post-release control following the prison sentence.

{¶ 37}  Appellate counsel, in the *Anders* brief, noted that the advisement "regarding [post release control] should have come before accepting the waiver of [community control sanctions] similar to a Court accepting a Plea.  However, since Appellant had already been found guilty by trial verdict and was proceeding with an agreed upon sentence, the colloquy required before accepting a plea does not apply and counsel for Appellant does not believe that the timing of the advisement of [post release control] was improper."  We agree.

{¶ 38}  The Third Assignment of Error has no arguable merit.

[Cite as *State v. Szloh*, 2013-Ohio-1073.]

## VI.  Conclusion

{¶ 39}    Pursuant to our responsibilities under *Anders,* we have conducted an independent review of the record.   Based on that review, we agree with appointed appellate counsel's assessment that there are no issues for appeal having arguable merit.   Accordingly, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Stephen K. Haller
Nathaniel R. Luken
Sean Vallone
Bryan M. Szloh
Hon. Stephen Wolaver